OPINION
{¶ 1} Defendant-appellant Allen William Rogers appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of voluntary manslaughter, in violation of R.C. 2903.03(A) with a firearm specification; and one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1)(C)(4)(f), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 30, 2004, the Stark County Grand Jury indicted appellant on the aforementioned charges. Appellant entered a plea of not guilty to the Indictment at his arraignment on December 3, 2004. The matter proceeded to jury trial on January 31, 2005. The following evidence was adduced at trial.
 {¶ 3} On August 17, 2004, at approximately 11:30 a.m., Craig Gordon and his brothers, Doug Bolds and Emanuel Bolds, decided to "hit a lick", i.e., commit a robbery at gunpoint for drugs. One of the brothers knew of a drug dealer in Massillon, named Jimmy Parker, who was ultimately chosen as the target. The trio planned to steal 1.5 ounces of cocaine, which would be worth approximately $1,500. Each of the brothers was assigned a task. Gordon was assigned to drive his girlfriend's Pontiac van. Doug was assigned to draw a gun on the drug dealer when the drugs were shown, grab the drugs, and run out of the house. Emmanuel was to "watch the back" of Doug. The three proceeded to Parker's residence.
 {¶ 4} Parker was not at his apartment, but the brothers learned the drug dealer might be at 18 Central Court, Massillon, and proceeded to that location. Annette Benjamin rented the house at 18 Central Court, and it was known as a "party house". Gordon dropped off his brothers. Emmanuel and Doug walked into the house because the front door was open. The Bolds brothers informed an individual by the name of Stanley Bruce Parker they wanted 1.5 ounces of crack cocaine, and asked him to contact Jimmy Parker. Stanley Bruce Parker proceeded to a pay phone to order the drugs. The Bolds brothers waited for a period of time, but Jimmy Parker did not arrive with the drugs. The brothers left and proceeded to their residence in Canton.
 {¶ 5} Sometime thereafter, believing Jimmy Parker should have arrived by that time, Gordon, Emmanuel, and Doug decided to revisit the Central Court residence. Gordon drove his brothers to the residence in his Buick LeSabre. The Bolds brothers reentered the house. Jimmy Parker was again called from a pay phone. While the brothers waited for Jimmy Parker to deliver the drugs, they sat in the living room with Annette Benjamin and Linda Provitt, who were smoking crack and drinking beer. After approximately an hour, Stanley Bruce Parker, who was in the kitchen, yelled, "Touchdown", signaling the drugs had arrived. Emmanuel and Doug entered the kitchen. Appellant entered the kitchen from the back door with the drugs. Appellant placed the crack cocaine on a scale, weighed, and packaged it. Doug pulled out the Lorsin model L .380 caliber semi automatic pistol he was carrying. Appellant pulled his weapon, and the two began to shoot at each other.
 {¶ 6} When the shooting began, Emmanuel Bolds hit the floor, and ran out the front door. Linda Provitt, who ran upstairs, heard six or seven pops. Annette Benjamin remained in the living room with her head covered. When the shooting stopped, Benjamin observed Doug Bolds run past, then fall to the floor. Benjamin rubbed Doug Bolds' back, telling him to "hang in there". Benjamin left the house and ran into an alley, where she covered her head with her t-shirt and began screaming.
 {¶ 7} Officer Paul Covert was dispatched to the Central Court residence for a disturbance call of "shots being fired." On his way to the area, he stopped a Pontiac minivan carrying three persons, including appellant whom the officer knew lived at the residence. Covert called for backup, turned over the van and its occupants to the responding officers, and headed to 18 Central Court. In the doorway, Covert found an unresponsive black male, who was later identified as Doug Bolds. Covert called paramedics, who transported Doug Bolds to Massillon Community Hospital. Doug Bolds was pronounced dead on arrival as the result of five gunshot wounds.
 {¶ 8} Stark County Criminalist Michael Short arrived at the scene at approximately 8:00 p.m., to gather evidence. He found a Lorsin Model L.380 semi automatic pistol containing a live cartridge; spent .38 caliber Winchester cartridges; a bloodstained, deformed lead hollow bullet from a .38 special caliber Smith Wesson revolver; blood; 2.5 grams of crack cocaine; and clothes belonging to Doug Bolds. A neighbor found a .38 special caliber Smith Wesson revolver containing five spent cartridges by a garage on the west side of an adjoining alley. Short opined both guns were operable. Two lead bullets, which had been fired from a .38 special caliber Smith Wesson revolver, were subsequently recovered from Doug Bolds' body.
 {¶ 9} Jennifer Bloink of the Stark County Crime Lab analyzed DNA samples from appellant, Doug Bolds, Emmanuel Bolds, and Stanley Bruce Parker. Bloink could not exclude the DNA found on the Lorsin model semiautomatic pistol as the DNA of Doug Bolds. Blood found on the trigger of the Smith Wesson was that of appellant.
 {¶ 10} During the course of the investigation, Detective Bobby Grizzard of the Massillon Police Department interviewed appellant at Massillon Community Hospital, where appellant was being treated for a gunshot wound to the arm. Appellant advised the detective he went to the Central Court residence to check on Annette Benjamin, his niece. When appellant arrived, he walked through the back door and found two individuals engaged in a struggle. Appellant was struck by a subsequent gunshot. Appellant denied any knowledge of Doug Bolds being shot. Appellant reiterated the same story in a second interview. However, during a tape recorded interview with Detective Grizzard, appellant, with his attorney present, admitted he grabbed a pistol from the kitchen cabinet and shot at Doug Bolds. Appellant claimed Doug Bolds had pulled his gun and shot Stanley Bruce Parker. Only after Doug Bolds shot Parker did appellant locate the gun and shoot Bolds. Appellant advised Detective Grizzard he had discarded the pistol in an alley on the way to the hospital.
 {¶ 11} After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court proceeded to sentencing. The trial court commented on appellant's prior criminal record which included three felony convictions for grand larceny and aggravated robberies. The trial court sentenced appellant to a term of nine years on the trafficking charge, a term of ten years on the voluntary manslaughter count, and a three year mandatory sentence on the firearm specification. The trial court ordered the nine year sentence be served concurrent with the ten year sentence. The trial court memorialized the convictions and sentences via Judgment Entry filed February 7, 2005.
 {¶ 12} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 13} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 14} "II.THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 15} "III. THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS IN VIOLATION OF THE APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES.
 {¶ 16} "IV. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 I {¶ 17} In the first assignment, appellant challenges the sufficiency and weight of the evidence.
 {¶ 18} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 19} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
 {¶ 20} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 21} Appellant was convicted of one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1)(C)(4)(f), which provides:
 {¶ 22} "(A) No person shall knowingly do any of the following:
 {¶ 23} "(1) Sell or offer to sell a controlled substance;
 {¶ 24} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 25} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
"* * *
 {¶ 26} "(f) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."
 {¶ 27} Appellant was also convicted of voluntary manslaughter, in violation of R.C. 2903.03(A), which reads: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 28} Appellant argues the jury should have disbelieved Emmanuel Bolds and Linda Provitt with respect to appellant's involvement in the drug transaction. Appellant maintains the jury should not have believed Emmanuel Bold's testimony because he is a convicted felon, who admitted lying to his family and the police about the events which culminated in the death of Doug Bolds on August 17, 2004. Appellant further submits the jury should not have believed Provitt because Provitt is a convicted felon, a crack addict and an alcoholic who had been using drugs and alcohol on the night of the incident.
 {¶ 29} Emmanuel Bolds testified he and his brothers plotted to "hit a lick" with James Parker as the target. After waiting an extended period of time for James Parker to arrive with the drugs, the Bolds brothers were called into the kitchen. While in the kitchen, Emmanuel Bolds observed appellant walk through the back door of the house, place crack cocaine on a scale, and package the drugs in plastic bags. We find this was sufficient, competent evidence from which the jury could find appellant guilty of trafficking in crack cocaine. Provitt testified she twice observed appellant driving in a van with James Parker on August 17, 2004. She also noted appellant and James Parker arrived at the house after the Bolds brothers initially left, but departed prior to the Bolds brothers' second visit. Approximately one week after the incident, James Parker assaulted Provitt, accusing her of conspiring with the Bolds brothers. Appellant was with James Parker when he beat and threatened Provitt.
 {¶ 30} Appellant further maintains the jury lost its way in rejecting his defense of self-defense. In order to establish the affirmative defense of self-defense, the evidence must show the following three elements: "* * * (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat." State v. Perry, Richland App. No. 02-CA-77,2003-Ohio-6097, at ¶ 25.
 {¶ 31} The evidence at trial revealed appellant twice denied any involvement in the shooting of Doug Bolds. However, during a tape recorded interview, appellant admitted he shot Doug Bolds, but only after Doug Bolds shot Stanley Bruce Parker. The evidence indicated Doug Bolds had been shot from behind, as he was running out of the kitchen. An examination of Doug Bolds' fatal wounds showed the shots came from a distance of more than three feet.
 {¶ 32} The jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. We do not find the jury clearly lost its way when it chose to believe the testimony of Emmanuel Bolds and Linda Provitt, despite the fact neither witness was the most upstanding citizen. We also do not find the jury lost its way in rejecting appellant's affirmative defense of self-defense. The evidence supported a finding appellant initiated the events by bringing the drugs into the residence. Based upon the evidence set forth in the Statement of the Case and Facts, supra, and the entire record in this matter, we find appellant's conviction was not against the manifest of the evidence.
 {¶ 33} Appellant's first assignment of error is overruled.
 III {¶ 34} For ease of discussion, we shall take appellant's assignments of error out of order. In his third assignment of error, appellant maintains the trial court erred in admitting hearsay statements in violation of his Sixth Amendment Right to confront witnesses.
 {¶ 35} The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. State v. Duncan (1978), 53 Ohio St.2d 215,219.
 {¶ 36} Specifically, appellant argues the trial court should not have permitted Detective Bobby Grizzard to testify as to statements made by Nancy Riley as to where and when she found the weapon used to kill Doug Bolds. Appellant submits these statements were hearsay and did not fall within any of the exceptions.
 {¶ 37} An officer's testimony concerning the reasons for his or her actions during an investigation generally is not considered hearsay, because, rather than to prove the truth of the statement made to the officer, it is offered to show why the officer as the testifying witness acted in a particular manner. State v. Williams (1996),115 Ohio App.3d 24; State v. Messer (1995), 107 Ohio App.3d 51; cf.,Crawford v. Washington (2004), 541 U.S. 56, 124 S.Ct. 1354, 158 L.Ed.2d 177.
 {¶ 38} At trial, Detective Grizzard testified he was assigned to investigate the shooting and death of Doug Bolds. On the evening of the incident, Grizzard spoke with appellant at the hospital. Appellant denied any knowledge as to the shooter's identity. The following day, the F.B.I. advised Grizzard a woman named Nancy Riley might have some "potential evidence" for his investigation. When Grizzard arrived at Riley's home, she gave the detective a .38 revolver, which was ultimately determined to be the weapon used by appellant to kill Doug Bolds. Riley also showed Grizzard where she found the gun, by a garage in a near-by alley. Detective Grizzard's testimony regarding his discussion with Nancy Riley was offered to explain how he traced the gun Riley found to the Central Court shooting. We do not find this testimony to be hearsay.
 {¶ 39} Assuming, arguendo, the testimony was hearsay, we find such was cumulative; therefore, appellant was not prejudiced by its admission. In his taped interview with Detective Grizzard, appellant informed the detective he threw the gun by out of the van window into a nearby alley.
 {¶ 40} Appellant's third assignment of error is overruled.
 IV {¶ 41} In his fourth assignment of error, appellant claims he was denied his right to a fair trial as the result of prosecutorial misconduct. Specifically, appellant asserts the prosecutor's description of him as a liar during closing arguments affected the outcome of the trial.
 {¶ 42} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168. A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v. Treesh (2001),90 Ohio St.3d 460, 464.
 {¶ 43} The prosecutor's closing argument included the following statements:
 {¶ 44} "I want you to listen to [appellant's taped statement to Detective Grizzard] very closely because not only did he lie to Detective Grizzard the first two times when he talked to him and said oh, I just walked in the kitchen, they were in this bear hug, shots fired, and I ran out [sic] the house after I got hit; but he also lied the third time.
 {¶ 45} "He also lied the third time. I just dropped by walking from my house, come down the road, through this road and that road.
 {¶ 46} "We know that is a lie because what did Linda Provitt tell us? She told us after the Bolds brothers left the first time, who showed up in the van? Jimmy Parker, the person called; and who was with him? [Appellant].
"* * *
 {¶ 47} "That's a lie that he told Detective Grizzard. He wasn't coming from his house, he was out riding around in a van with Jimmy Parker.
 {¶ 48} "He says I walk in, and I see Stanley Bruce Parker arguing; and then there is a struggle, and he is grabbing him; and the guy pulls a gun, and he shoots him.
 {¶ 49} "By his scenario they are in a struggle, in a lock, he is grabbing for the gun[.] But you know what? * * * Stanley Bruce Parker's clothing, don't confirm that story.
 {¶ 50} "How can I say that? * * * You heard Michael Short testify about gunshot residue and how we can find them on clothes after a gun is fired and what the distance was and * * * we would find gunshot residues; but we didn't find any.
"* * *
 {¶ 51} "There was no struggle going on when [appellant] walked into the kitchen [as] he would have you believe in his statement to Detective Grizzard. Again not true.
"* * *
 {¶ 52} "You know, if you are telling the truth it remains constant. It flows. It is always the same. It is not different every time you get asked another question.
 {¶ 53} "But when this guy is giving different statements, he is giving different answers to the same questions. That is not truthfulness." Tr. Vol. II at 400-406.
 {¶ 54} The prosecution is entitled to a certain degree of latitude in its closing remarks. Lott, supra. Generally, the state may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." Id. (Citation omitted). It is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonably supports the characterization. State v. Stroud,
Montgomery App. No. 18713, 2002-Ohio-940. However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside the record. State v. Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 55} In the instant action, appellant's story changed over the course of the investigation. He originally denied any knowledge of Doug Bolds being shot, but later admitted shooting Bolds in self-defense. The prosecutor referred the jury to specific testimony to establish these inconstancies and what inferences could be drawn therefrom. We find the prosecutor's statements were neither improper nor prejudicial to appellant. Moreover, the prosecutor's characterization of him as a liar was a comment on the evidence, not an unsupported personal opinion.
 {¶ 56} Appellant's fourth assignment of error is overruled.
 II {¶ 57} In his second assignment of error, appellant contends he was denied effective assistance of trial counsel. We disagree.
 {¶ 58} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 59} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 60} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558 (citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143 (quoting Strickland, supra. at 697).
 {¶ 61} Specifically, appellant asserts trial counsel was ineffective for failing to object to Detective Grizzard's testimony regarding his meeting with Nancy Riley, and failing to object to the prosecutor's characterization of him as a liar during closing argument.
 {¶ 62} Having found no error in appellant's third and fourth assignments of error, we find counsel was not ineffective in failing to raise the objections of which appellant complains. Appellant cannot establish either prong of the Strickland test.
 {¶ 63} Appellant's second assignment of error is overruled.
 {¶ 64} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J. Farmer, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.