OPINION
{¶ 1} Defendant-appellant, Kevin Johnson, appeals his convictions in the Butler County Court of Common Pleas on four counts of rape in violation of R.C. 2907.02(A)(1)(b). We affirm the trial court's decision.
 {¶ 2} Between April and June 2004, appellant, then 19 years old, intermittently lived with Tommy Brown and Ella Parker, and their family, including nine-year-old J.B. Appellant had been close to Parker for years, and she treated him "like one of her own" children. J.B. shared a bedroom with an older sister, and appellant would sleep on the floor in the room with them. On four occasions during this period, appellant inserted his fingers into J.B.'s vagina, and on one of those four occasions, also inserted his penis inside of her vagina.
 {¶ 3} On the evening of June 26, 2004, around 11:30 p.m., Parker went to check on the children who had gone to bed sometime earlier. She found that J.B. was not in her room. She looked around the house for her and found the bathroom door closed. She knocked on the door, and when appellant answered, she asked if he had seen J.B. He responded that he had not. Having a suspicion that something was wrong, Parker positioned herself outside the bathroom door; moments later she saw J.B. exit the bathroom, followed by appellant. Appearing stunned and scared, J.B. exclaimed to her mother, "[h]e wouldn't let me out." Appellant said nothing at that point and Parker left the house to find Brown. When she returned, Brown was already at the home with the police. Appellant had left.
 {¶ 4} J.B. and her mother were interviewed at the Hamilton Police Department and then proceeded to Children's Hospital in Cincinnati, where J.B. was examined. After speaking with appellant's father, police found him at a friend's home. He agreed to accompany the police to the Hamilton Police Department. Appellant was taken to an interview room where Sgt. Wade McQueen advised appellant of his Miranda rights. Appellant executed a written waiver of those rights and agreed to speak with Sgt. McQueen. Although appellant initially denied having any sexual contact with J.B., he eventually told Sgt. McQueen that he had taken J.B. to into the bathroom that evening and was "fingering her," i.e., putting his fingers inside of J.B.'s vagina. Sgt. McQueen then asked appellant if he had put his penis inside of the girl, and he replied "No, it wouldn't fit. It is too big."
 {¶ 5} When asked how many times this "fingering" had happened, appellant said "several" times, eventually indicating he had digitally penetrated J.B. on four separate occasions, over a period of several weeks, with several days elapsing between each incident. Appellant stated it would happen when he would see J.B. in bed, and he "got a sexual urge." He would start talking to her and "fingering" her; then he would lay back down on the floor and masturbate. Appellant signed a written statement relating these events. The statement reads in pertinent part as follows:
 {¶ 6} "My name is Kevin Johnson. I'm at the Hamilton Police Department speaking with Detective McQueen in reference to the events that happened earlier tonight. I was at 25 Hurm Street, Number 4. I had been staying there for about two months. My two sisters lived there with their dad. About a month ago, I was lying on the floor of my sister [J.B.]'s room trying to sleep. I looked up and saw [J.B.] awake. She was lying on top of the covers. I don't know why, but I went up to her bed and started touching her legs. I then took her panties off and starting fingering her. When I say fingering her, I mean I am sticking my fingers in her vagina. I think I fingered her about two minutes or so. I don't remember saying anything to her or saying — I'm sorry. I don't remember saying anything to her or her saying anything to me. She put her panties back on, and I laid back down to the floor and masturbated. * * * A few nights later, I did the same thing again with pulling her panties off of her and fingering her. About two weeks ago, I think the same thing happened again with me fingering her. I had went and laid down in [J.B.]'s bedroom and got a sexual urge. I went in [J.B.]'s bed and pulled her panties down and started fingering her again. I then told her to go to the bathroom because I was afraid that my sister was going to wake up. She got up and walked into the bathroom, and I followed her. We got into the bathroom. And she had her pants and panties off, and I fingered her again. And her mom knocked on the bathroom door and asked if [J.B.] was in there. I told her no. I then told [J.B.] not to go out of the bathroom. We waited for a little while, and then I went out first and [J.B.] was behind me. [J.B.] went to the living room, and I went to the bedroom and grabbed my jacket. I knew that Tommy was going to kick me out. I then went into the living room and waited on Tommy. Tommy came in and talked to [J.B.] and me and then told me to get out. I left and walked around for a while, and then I went to Tyrone Parker's house."
 {¶ 7} Appellant was charged with four counts of rape, and the matter proceeded to a jury trial. The state presented the foregoing evidence. Appellant testified, denying that he had raped J.B., and denying that he had ever engaged in any sexual conduct with her. Appellant testified that on the night in question he was alone in the bathroom when Parker asked if J.B. was in there, and he replied, "no." He testified that Parker then ran out of the house, and he was subsequently falsely accused of rape. Appellant testified that he provided police with the confessions only because they called him a liar, and told him he could go home if he signed a written confession.
 {¶ 8} The jury found appellant guilty of four counts of rape, with a finding that the victim was under ten years old. Appellant was sentenced, and now appeals raising ten assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 11} In his first assignment of error, appellant contends that the trial court erred in overruling his motion to suppress his oral and written statements to police. Appellant contends that police coerced him into making the statements.
 {¶ 12} When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the weight of the evidence and the credibility of witnesses. See State v. Mills (1992), 62 Ohio St.3d 357, 366; State v.Fanning (1982), 1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court relies upon the trial court's ability to assess the credibility of witnesses, and accepts the trial court's findings if they are supported by competent, credible evidence. See State v.McNamara (1997), 124 Ohio App.3d 706, 710; State v. Anderson
(1995), 100 Ohio App.3d 688, 691. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on its findings of fact, are correct. Id.
 {¶ 13} A confession elicited by "coercive police activity" is involuntary and violates both the United States and Ohio Constitutions. State v. Loza, 71 Ohio St.3d 61, 66,1994-Ohio-409, quoting Colorado v. Connelly (1986),479 U.S. 157, 167, 107 S.Ct. 515. In determining whether a confession was involuntarily induced, the court must consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Loza at 66. Any statement given "freely and voluntarily without any compelling influences is, of course, admissible in evidence." State v. Tucker, 81 Ohio St.3d 431,436, 1998-Ohio-438.
 {¶ 14} Appellant contends that his confession was coerced because the detective repeatedly accused appellant of lying when he denied the allegations against him. Review of the record reveals that the interviewing detective did nothing more than urge appellant to tell the truth about the incidents. Such "[a]dmonitions to tell the truth are considered to be neither threats nor promises and are permissible" when interrogating a suspect. Loza at 66, citing State v. Cooey (1989),46 Ohio St.3d 20, 28; State v. Wiles (1991), 59 Ohio St.3d 71, 81. Appellant further contends that his written confession is inadmissible because it was recorded by the detective, not by him. However, review of the record demonstrates that appellant acknowledged that the detective's written recitation of his confession was accurate, and the confession bears his signature attesting to its accuracy.
 {¶ 15} We find appellant's contention that his confession was coerced to be without merit. Consequently, the trial court did not err in overruling his motion to suppress the statements. The assignment of error is overruled.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING J.B. COMPETENT AND PERMITTING HER TO TESTIFY."
 {¶ 18} Appellant's second assignment of error asserts that the trial court erred when it determined that J.B., 11 years old at the time of trial, was competent to testify.
 {¶ 19} The trial court is in the best position to determine the competency of witnesses and is afforded considerable discretion in such matters. State v. Uhler (1992),80 Ohio App.3d 113, 118, citing State v. Bradley (1989),42 Ohio St.3d 136, paragraph one of the syllabus. See, also, State v. Wilson
(1952), 156 Ohio St. 525. Absent an abuse of discretion, the competency determinations of the trial court will not be disturbed on appeal. State v. Frazier (1991),61 Ohio St.3d 247, 251.
 {¶ 20} Evid.R. 601(A) states in pertinent part that "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." A child witness "who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event." State v. Clark,71 Ohio St.3d 466, 1994-Ohio-43, paragraph one of the syllabus. See, also, Uhler at 118. In Clark, the court reasoned that Evid.R. 601(A) "favors competency," and as a result, "absent some articulable concern otherwise, an individual who is at least ten years of age is per se competent to testify." Id. at 469. See, also, State v. Cooper (2000), 139 Ohio App.3d 149, 164-165. Therefore, once a child attains the age of ten, the presumption of competency created by Evid.R. 601(A) applies to that child witness.
 {¶ 21} In the present matter, the evidence established that J.B. was nine years old when the rapes occurred, and 11 years old at the time of trial. Because she was older than ten at the time of trial, she was presumed to be a competent witness. See Clark;Uhler. Appellant has not articulated a particular concern regarding her competency, and review of the record reveals no abuse of discretion in permitting her testimony. Whether her testimony concerning events which occurred before she reached the age of ten is accurate is a credibility issue to be resolved by the trier of fact, not a question of competency. See Uhler at 118. The second assignment of error is overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "THE JURY VERDICT WAS AGAINST THE SUFFICIENCY AND THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} In his third assignment of error, appellant argues both that the state failed to present sufficient evidence to support the convictions, and that the convictions are against the manifest weight of the evidence presented at trial.
 {¶ 25} Sufficiency of the evidence and weight of the evidence are legally distinct issues. See State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. In essence, "sufficiency is a test of adequacy." Id. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id., citing State v.Robinson (1955), 162 Ohio St. 486. Weight of the evidence concerns "the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other." Id. at 387 (emphasis sic). We will address each issue in turn.
 {¶ 26} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether the evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Tenace,109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 27} Appellant was charged with four counts of rape, in violation of R.C. 2907.02. This section provides, in pertinent part that, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender" when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person[.]"
 {¶ 28} The term "sexual conduct" is defined in R.C.2907.01(A), in part, as "vaginal intercourse between a male and female * * * and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another."
 {¶ 29} J.B. testified that appellant inserted his fingers into her vagina on at least four occasions, and on one occasion, also attempted to insert his penis inside of her vagina. In this case, the victim's testimony alone, if believed, was sufficient to prove each element of the offense of rape. Accord State v.Roberts, Hamilton App. No. C-040547, 2005-Ohio-6391, ¶ 64;State v. Lewis (1990), 70 Ohio App.3d 624, 638. We consequently find that the convictions are supported by sufficient evidence.
 {¶ 30} We next turn to appellant's contention that the convictions are not supported by the manifest weight of the evidence. A court considering a manifest-weight claim "review[s] the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses." Statev. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Id. The discretionary power to grant a new trial should be exercised "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins,78 Ohio St.3d at 387, quoting Martin at 175. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389, citing Section 3(B) (3), Article IV of the Ohio Constitution.
 {¶ 31} In addition to J.B.'s testimony, appellant's written confession was entered into evidence, and Detective McQueen testified that appellant admitted putting his fingers inside J.B.'s vagina on at least four occasions. J.B.'s mother testified about the evening that she discovered appellant in the bathroom with J.B. She testified that appellant lied to her about J.B.'s presence in the bathroom, and that when J.B. emerged from the bathroom she told her appellant "wouldn't let me out." To the contrary, appellant testified that the events never occurred, and that he admitted to police that he committed the offenses merely to end the interview.
 {¶ 32} Appellant argues that the trier of fact lost its way in convicting him because his testimony was the more credible. However, an appellate court reviewing the evidence on a manifest weight claim must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury in the present case chose to accept and allocate significant weight to the evidence supporting appellant's guilt. Considering the credibility and strength of the evidence in favor of appellant's convictions, this situation falls short of "the exceptional case in which the evidence weighs heavily against the conviction." Thompkins,78 Ohio St.3d at 387. A conviction is not against the manifest weight of the evidence merely because the trier of fact believes the state's evidence over the defendant's. See State v. Guzzo
(Sept. 20, 2004), Butler App. No. CA2003-09-232, 2004-Ohio-4979, ¶ 13. Appellant's third assignment of error is overruled.
 {¶ 33} Assignment of Error No. 4:
 {¶ 34} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A MISTRIAL WHEN MEMBERS OF THE JURY SAW APPELLANT IN HANDCUFFS."
 {¶ 35} In his fourth assignment of error, appellant argues that the trial court erred by not granting a mistrial after two members of the jury saw appellant in handcuffs.
 {¶ 36} The decision to grant a mistrial under Crim.R. 33 rests within the sound discretion of the trial court. State v.BIankenship (1995), 102 Ohio App.3d 534, 569, citing State v.Sage (1987), 31 Ohio St.3d 173, 182. An appellate court will not disturb this exercise of discretion "absent a showing that the accused has suffered material prejudice." Id. The granting of a mistrial is only necessary where a fair trial is no longer possible. Id., citing State v. Franklin (1991),62 Ohio St.3d 118, 127. A mistrial should not be granted "merely because some minor error or irregularity has arisen." Id., citing State v.Reynolds (1988), 49 Ohio App.3d 27, 33.
 {¶ 37} Review of the record reveals that, during a lunch recess, two jurors observed appellant in handcuffs and shackled. The incident occurred when appellant was being escorted between floors of the courthouse in an elevator also used by the public. The trial court conducted a voir dire of the jurors to determine what effect the incident might have on them. Both jurors indicated that seeing appellant in handcuffs would not prevent them from remaining fair and impartial, and the trial court denied appellant's request for a mistrial.
 {¶ 38} Although a defendant should not be tried while shackled, absent unusual circumstances, a defendant's right to a fair trial "is not prejudiced by the use of handcuffs, or shackles where the jurors' view of the defendant in custody is brief, inadvertent, and outside of the courtroom." Blankenship
at 553, citing State v. Kidder (1987), 32 Ohio St.3d 279,2852-86. "The ultimate question is the degree of prejudice, if any, which such brief exposure caused." State v. Chitwood
(1992), 83 Ohio App.3d 443, 448. The danger of prejudice to a defendant is slight where a juror's view of the defendant in custody is brief, inadvertent and outside of the courtroom.Kidder at 285-286.
 {¶ 39} In the present case, two members of the jury inadvertently saw appellant in restraints, outside of the courtroom. Upon inquiry, both jurors indicated that having seen appellant in handcuffs would have no impact on their deliberations. There is no evidence that these circumstances unduly prejudiced appellant's right to a fair trial or in any way contributed to the guilty verdict in this case. As a result, we find that the trial court did not abuse its discretion when it overruled appellant's motion for a mistrial. Appellant's fourth assignment of error is overruled.
 {¶ 40} Assignment of Error No. 5:
 {¶ 41} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29."
 {¶ 42} When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, an appellate court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence. Tenace, 109 Ohio St.3d 255,2006-Ohio-2417, ¶ 27; see, also, State v. Jackson, Butler App. Nos. CA2005-02-033 CA2005-03-051, 2006-Ohio-1147, ¶ 21. Consequently, our analysis and rejection of appellant's third assignment of error challenging the sufficiency of the evidence to support the convictions is also dispositive of this assignment of error. Appellant's fifth assignment of error is overruled.
 {¶ 43} Assignment of Error No. 6:
 {¶ 44} "THE ADMISSION OF J.B.'S MEDICAL RECORDS VIOLATED THE CONFRONTATION CLAUSE AND/OR CONSTITUTED IMPERMISSIBLE HEARSAY."
 {¶ 45} Appellant's sixth assignment of error asserts that the admission of medical records containing statements made by J.B. to medical examiners was error in light of the United States Supreme Court's decision in Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354. Alternatively, appellant argues that the records themselves, not just J.B.'s statements contained therein, are inadmissible hearsay. We find that both assertions are without merit.
 {¶ 46} In Crawford, the United States Supreme Court held that out-of-court statements that are testimonial in nature are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. Id. at 68. Therefore, the threshold issue we must determine is whether or not J.B.'s statements are testimonial. State v. Crager, Marion App. No. 9-04-54, 2005-Ohio-6868, at ¶ 28.
 {¶ 47} While the Supreme Court in Crawford did not provide an exact definition of the term, it noted that at a minimum, "testimonial" statements include prior testimony at a preliminary hearing, before a grand jury or at a former trial, and statements made during police interrogations. Crawford at 68. It noted that the term would also encompass statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Id.
 {¶ 48} Following Crawford, the Supreme Court further explored the dichotomy between testimonial and nontestimonial statements in Davis v. Washington (2006), ___ U.S. ___,126 S.Ct. 2266, 2273. In Davis, the Court held that statements to a 911 operator reporting an emergency were nontestimonial, but that a police interrogation, taking place in the home of the witness, was testimonial. As nontestimonial, the 911 call was properly admitted despite the witness not attending trial and the defendant not having an opportunity for cross-examination. Id. at 2277. The police interrogations were found to be improperly admitted at trial because testimonial evidence may only be admitted when the witness is unavailable for trial and the defendant had an opportunity for cross-examination. Id. at 2278. The Court applied the following test to reach its conclusion:
 {¶ 49} "Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 2273-74. With this standard in mind, we turn to appellant's hearsay argument in the present case.
 {¶ 50} In general, statements made by child abuse victims to medical providers are not testimonial in nature. See, e.g.,State v. Sheppard, 164 Ohio App.3d 372, 2005-Ohio-6065, ¶ 30;Edinger at ¶ 82; In re D.L., Cuyahoga App. No. 84643,2005-Ohio-2320, ¶ 20. Applying the reasoning of Crawford andDavis, we reach the same conclusion in the present case. J.B. made the statements while seeking treatment at a hospital, not in the course of police questioning. The statements were provided so that the hospital's medical staff could treat her, not to investigate acts of alleged sexual abuse, nor to determine the identity of the perpetrator of the abuse. See Crawford at 68. Additionally, there is nothing in the record to indicate that J.B., at the time only nine years old, would have realized that her statements would be available for use at a later trial. SeeEdinger at ¶ 90 (finding it "highly doubtful" that a six-year-old had any idea that her statements would be preserved for use at a later trial).
 {¶ 51} Because J.B.'s statements contained in the medical records were not testimonial, their introduction did not violate appellant's constitutional right to confront witnesses. AccordSheppard; Edinger; State v. Martin, Franklin App. No. 05AP818, 2006-Ohio-2749, ¶ 22. Even assuming arguendo that her statements were testimonial, we note that J.B. was called to testify, providing appellant with the opportunity to cross-examine her regarding her statements which formed the basis for the medical records, thus comporting with the standards for admitting her hearsay statements set forth in both Crawford andDavis. See Crawford at 59; Davis at 2278; accord Siler;State v. Jeffries, Stark App. No. 2005-CA0-128, 2006-Ohio-828, ¶ 14-19. "When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." Crawford at 59.
 {¶ 52} Appellant also contends that the medical records are inadmissible hearsay. However, Evid.R. 803(4) excepts from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 53} A trial court has broad discretion to determine whether a declaration should be admissible under a hearsay exception. State v. Dever (1992), 64 Ohio St.3d 401, 410. The records at issue contain statements made by J.B., a patient seeking diagnosis and treatment by medical professionals. We do not find that the trial court abused its discretion by admitting the evidence under this hearsay exception. See Sheppard at ¶ 29-30.
 {¶ 54} Finally, we note that appellant stipulated generally to the admissibility of the medical records at trial, while making several hearsay objections to certain statements not made by J.B. The trial court redacted the portions to which appellant objected. Stipulations or agreements by a defendant in the course of a criminal trial are binding and enforceable. State v.Brewer, Clermont App. No. CA2002-03-025, 2003-Ohio-1064, ¶ 13, citing State v. Folk (1991), 74 Ohio App.3d 468, 471. Appellant is consequently bound by his stipulation as to the admissibility of the records. See id.
 {¶ 55} Appellant's sixth assignment of error is overruled.
 {¶ 56} Assignment of Error No. 7:
 {¶ 57} "THE CUMULATIVE EFFECT OF ASSIGNMENTS OF ERRORS ONE THROUGH SIX DENIED APPELLANT A FAIR TRIAL."
 {¶ 58} Appellant's seventh assignment of error contends that the cumulative effect of the errors argued in his first six assignments of error, considered together, merit reversal of his convictions.
 {¶ 59} Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprives a defendant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-168; State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus. However, the doctrine of cumulative error is not applicable where a defendant fails to establish multiple instances of harmless error during the course of the trial. Garner at 64.
 {¶ 60} This court has found no instances of error as set forth in appellant's previous assignments of error; nor has appellant alleged or established any instances of harmless error. Consequently, the doctrine of cumulative error is not applicable in the present case. Appellant's seventh assignment of error is overruled.
 {¶ 61} Assignment of Error No. 8:
 {¶ 62} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO SERVE CONSECUTIVE PRISON TERMS."
 {¶ 63} In his eighth assignment of error, appellant asserts that the trial court erred by imposing consecutive prison terms.
 {¶ 64} Appellant first contends that his sentence was imposed in violation of the Ohio Supreme Court's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the court held that R.C. 2929.14(E)(4), which governed the imposition of consecutive sentences, was unconstitutional inasmuch as it required judicial fact-finding before the imposition of consecutive prison sentences. Id. at paragraph four of the syllabus.
 {¶ 65} Appellant is mistaken in asserting that the trial court relied on this unconstitutional section when sentencing him to consecutive prison terms. The trial court in fact specifically found that "none of the factors set forth in ORC 2929.14(E)(4) would justify consecutive sentences in this case." Appellant's contention that he was sentenced under an unconstitutional statute is consequently without merit.
 {¶ 66} Nevertheless, the trial court sentenced appellant to consecutive prison terms upon concluding that consecutive sentences were mandated by R.C. 2929.13(F)(2). The trial court stated at the sentencing hearing that it "does not have the discretion to run these sentences concurrent." In its sentencing entry, the court stated: "Since the conviction on each count requires a mandatory sentence, pursuant to ORC 2929.13(F)(2), the Court is required by law to run each sentence consecutively. The Court specifically finds that none of the factors set forth in ORC 2929.14(E)(4) would justify consecutive sentences in this case." Appellant maintains on appeal that the trial court's interpretation of R.C. 2929.13(F)(2) was erroneous.
 {¶ 67} The paramount consideration in determining the meaning of a statute is legislative intent. State v. Jackson,102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34. In determining legislative intent, we review the statutory language, according the words used their usual, normal, or customary meaning. State ex rel.Wolfe v. Delaware Cty. Bd. of Elections, 88 Ohio St.3d 182, 184,2000-Ohio-294. "With respect to legislative intent, `[i]f the statute's language reasonably permits an interpretation consistent with that intent, we should adopt it.'" State ex rel.Petro v. Gold, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 60, quotingF. Hoffmann-La Roche Ltd. v. Empagran S.A. (2004),542 U.S. 155, 174, 124 S.Ct. 2359.
 {¶ 68} After reviewing R.C. 2929.13(F)(2) and considering the legislative intent evidenced in the statute's language, we disagree with appellant's argument that the trial court erred in interpreting the statute. R.C. 2929.13(F) requires mandatory prison terms for 14 serious offenses, one of which is "any rape." Specifically, the statute states that the court "shall impose a prison term or terms" for the listed offenses. We find that the imposition of multiple, mandatory prison terms under R.C.2929.13(F) implicitly requires the imposition of consecutive prison terms. Anything less would diminish the intended effect of the mandatory sentences, and would render such sentences not truly mandatory. We do not interpret the language of R.C.2929.13(F) to allow for the possibility of a "volume discount," where a defendant essentially serves one term for the commission of multiple, serious crimes for which mandatory prison terms are required.
 {¶ 69} In addition to the "shall impose a prison term or terms" language, R.C. 2929.13(F) states that, except as specifically provided in R.C. 2929.20 or R.C. 2967.191, or when parole is authorized under R.C. 2967.13, the court "shall not reduce" a defendant's prison terms pursuant to R.C. 2929.20, R.C.2967.193, or any other provision of R.C. Chapter 2967 or Chapter 5120. We find this language to be a further indication of the legislature's intent to mandate consecutive sentences for multiple prison terms imposed under R.C. 2929.13(F). It is apparent that the statute does not favor reductions in mandatory sentences imposed, which is what an order of concurrent sentences essentially is.
 {¶ 70} The Ohio Supreme Court has stated that sentencing courts have full discretion to impose a prison sentence within the statutory range and to impose multiple sentences either consecutively or concurrently. See Foster, 2006-Ohio-856, at ¶100; State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 9. However, the court was setting forth a general rule, and was not addressing cases in which a particular statute requires consecutive sentences, or cases in which multiple, mandatory sentences are imposed. A review of Ohio sentencing law reveals instances in which a sentencing court does not have discretion to impose consecutive or concurrent sentences. See, e.g., R.C.2929.41(B) (sentences for certain misdemeanors, such as escape and pandering sexually oriented matter involving a minor, must be served consecutively); R.C. 2971.03 (sentences for certain violent sex offenses must be served consecutively). We find that the imposition of multiple, mandatory sentences under R.C.2929.13(F) is another such instance.
 {¶ 71} We are aware of the general rule set forth in R.C.2929.41(A) that sentences of imprisonment shall be served concurrently. See, also, State v. Barnhouse,102 Ohio St.3d 221, 2004-Ohio-2492, ¶ 11. We are further aware that the listed exceptions to that rule do not include R.C. 2929.13(F). However, the general rule and the exceptions stated in R.C. 2929.41(A) do not specifically address cases in which the sentencing court orders multiple, mandatory sentences. R.C. 2929.13(F) is a more specific statute dealing with such cases, and therefore the legislative intent embodied in that statute controls. See R.C.1.51; State v. Yarbrough, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶54, citing State ex rel. Belknap v. Lavelle (1985),18 Ohio St.3d 180, 182 ("It is a well-established rule of statutory construction that specific provisions prevail over general provisions.")
 {¶ 72} We recognize that the courts of appeals in State v.Franklin (Dec. 22, 2000), Greene App. No. 99-CA-117,2000 WL 1867524, *4, and State v. Sharp, Allen App. No. 1-020-6, 2002-Ohio-2343, ¶ 26, have stated that a sentencing court has the option to impose concurrent or consecutive sentences when a defendant is convicted of multiple counts of an offense listed in R.C. 2929.13(F). However, we respectfully disagree with those courts' conclusions, by which this court is not bound. As stated above, it is our view that the imposition of multiple, mandatory prison terms under R.C. 2929.13(F) implicitly requires those terms to be served consecutively. Otherwise, the prison terms would not truly be mandatory. Accordingly, we overrule appellant's eighth assignment of error.
 {¶ 73} Assignment of Error No. 9:
 {¶ 74} "THE IMPOSITION OF FOUR CONSECUTIVE LIFE SENTENCES IS CRUEL AND UNUSUAL PUNISHMENT."
 {¶ 75} In his ninth assignment of error, appellant asserts that the imposition of four, consecutive life sentences constitutes cruel and unusual punishment.
 {¶ 76} Cases in which cruel and unusual punishments have been found "are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." State v. Weitbrecht, 86 Ohio St.3d 368, 371,1999-Ohio-113, quoting McDougle v. Maxwell (1964),1 Ohio St.2d 68, 70. The rape of a child "is shocking, outrageous, abominable, and it has enduring effects on the child;" consequently, a "penalty equivalent to its enormity" is required. State v.Gregory (1982), 8 Ohio App.3d 184, 185-186.
 {¶ 77} We note that the constitutionality of the sentence mandated by R.C. 2907.02(B) "is a well-settled issue." State v.Sholler (Apr. 28, 1997), Clinton App. No. CA96-08-013. Ohio courts, including this court, have held that a sentence of life imprisonment under R.C. 2907.02(B) is constitutional and is not cruel and unusual punishment. See Sholler; State v. Smelcer
(1993), 89 Ohio App.3d 115, 127; State v. Gladding (1990),66 Ohio App.3d 502, 513; State v. Fenton (1990),68 Ohio App.3d 412, 438-439; Gregory. Given the crimes committed by appellant in this case, we do not find that the consecutive life sentences ordered by the trial court constituted cruel and unusual punishment. See State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057, ¶ 119-120; and State v. Wolf (Dec. 30, 1994), Lake App. No. 93-L-151, 1994 WL 738805, *11 (finding consecutive life sentences for rape not cruel and unusual punishment). Accordingly, we overrule appellant's ninth assignment of error.
 {¶ 78} Assignment of Error No. 10:
 {¶ 79} "THE TRIAL COURT'S FINDING THAT APPELLANT IS A SEXUAL PREDATOR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE `BY CLEAR AND CONVINCING EVIDENCE' THAT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."
 {¶ 80} In his final assignment of error, appellant argues that the trial court's decision classifying him a sexual predator is against the manifest weight of the evidence.
 {¶ 81} The Ohio Supreme Court has held that R.C. Chapter 2950 is remedial in nature and not punitive. State v. Cook,83 Ohio St.3d 404, 413, 1998-Ohio-291. Accordingly, appellate review of a trial court's sexual predator determination is conducted applying the civil manifest weight standard. See id.; State v. Bowman,
Butler App. Nos. CA2001-05-117 and CA2001-06-047, 2002-Ohio-4373, ¶ 6. This standard requires that the trial court's determination that an offender is a sexual predator be upheld if the court's judgment is supported by some competent, credible evidence going to all the essential elements of the case. Id., citing C.E.Morris Co. v. Foley Constr. (1987), 54 Ohio St.2d 279, 280. An appellate court "will not disturb a trial court's determination upon a sexual predator hearing on appeal as being against the manifest weight of the evidence if reasonable minds could arrive at the conclusion reached by the trier of fact." Id. (citations omitted).
 {¶ 82} A sexual predator is statutorily defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). When making its determination, a trial court can classify an individual as a sexual predator only if it concludes that the state has established both prongs of the definition by clear and convincing evidence. R.C. 2950.09(B). R.C. 2950.09(B)(2) requires the trial court to consider "all relevant factors" in making this determination.[1] See, also, State v. Lagow, Butler App. No. CA2001-06-144, 2002-Ohio-557.
 {¶ 83} There is no dispute that the offenses for which appellant was convicted constitute sexually-oriented offenses under the sexual predator statue. Consequently, at issue in the instant matter is whether the state presented clear and convincing evidence at trial that appellant is likely to engage in future sexually-oriented offenses. See State v. Cook,83 Ohio St.3d at 423-424, 1998-Ohio-291.
 {¶ 84} Having reviewed the record, we conclude that the trial court's sexual predator determination is supported by competent, credible evidence. At the time of the offenses, the victim was nine years old while appellant was 19. Appellant was treated as a member of the victim's family, and used the trust gained by this status to commit the offenses. The abuse occurred on multiple occasions over a period of some months. The victim's age, the numerous incidents, and appellant's willingness to victimize a child regarded as a family member are "telltale signs" of his likelihood to reoffend. See State v. McComas, Franklin App. No. 05AP-134, 2006-Ohio-380. See, also, State v. Jackson, Franklin App. No. 05AP-101, 2005-Ohio-5094, ¶ 36-40 (age of minor victim and multiple incidents were indicators of accused's inability to refrain from criminal conduct); see, generally, State v.Eppinger, 91 Ohio St.3d 158, 2001-Ohio-380. Further, psychological testing of appellant revealed his risk of recidivism as "moderate to high." This evidence amply supports the trial court's determination that appellant is a sexual predator. Appellant's tenth assignment of error is overruled.
 {¶ 85} The judgment of the trial court is affirmed.
Young, J., concurs.
Walsh, J., concurs in part and dissents in part.
[1] These factors include, but are not limited to: the offender's age; the offender's past criminal conduct and if a criminal history, whether sentence served or treatment obtained; the age of the victim; whether multiple victims were involved; whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; mental illness or disability of offender; the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; whether offender displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct.