OPINION *Page 2 
{¶ 1} Defendant-appellant, Harlin D. Orsborne (hereinafter "Orsborne"), appeals the judgment of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On March 16, 2006, the Allen County Grand Jury indicted Orsborne for rape, in violation of R.C. 2907.02(A)(1)(b) and a first degree felony. Orsborne pled not guilty to the indictment. On April 13, 2006, an amended indictment was filed indicting Orsborne for rape, in violation of R.C. 2907.02(A)(1)(b) and a felony of the first degree with a specification that the victim was less than ten years of age.
 {¶ 3} On April 27, 2006, Orsborne filed a motion in limine requesting the out of court statements made by the victim be excluded as violating the confrontation clause. The trial court denied the motion in limine.
 {¶ 4} A jury trial was held and the jury found Orsborne guilty. On October 11, 2006, the trial court sentenced Orsborne to a mandatory term of life imprisonment.
 {¶ 5} It is from this judgment that Orsborne appeals and asserts four assignments of error for our review. For clarity of analysis, we will discuss these assignments of error out of the order in which they were presented in Orsborne's brief. *Page 3 
 ASSIGNMENT OF ERROR NO. I The trial court committed error prejudicial to the defendant might [sic] overruling the defendant's motion in limine a [sic] of April 27, 2006 and allowing the testimony of Pamela Inbody and Jean Luce as to out-of-court statements of the child victim, [S.F.].
 ASSIGNMENT OF ERROR NO. IV The trial Court [sic] committed error prejudicial to the Defendant by allowing the use of a child victim statement even with a cautionary instruction to the jury, outside the restrictions of Evidence Rule 807(A)(4).
 {¶ 6} In his first assignment of error, Orsborne argues that any out of court statements that are testimonial in nature should be excluded pursuant to Crawford v. Washington, (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177, notwithstanding any hearsay exceptions. Orsborne argues a reasonable declarant, in this case a four year old, would expect her statements accusing someone of sexual contact would be equal to tattling, and that a four year old declarant does not distinguish between telling a parent, a nurse, or a government official. Thus, Orsborne concludes that in the reasonable mind of the declarant she was making testimonial statements accusing the defendant, and her statements to her grandmother and the nurse should have been excluded.
 {¶ 7} Orsborne argues, in his fourth assignment of error, the prosecution failed to file a timely notice under Evid.R. 807(A)(4) to introduce the testimony of the child victim via the child's grandmother, Jean Luce (hereinafter "Luce"). *Page 4 
According to Orsborne, the only reason to provide the victim's statement is "to prove the truth of the matter that Orsborne was the perpetrator". Orsborne argues Luce's actions did not naturally flow from the identification, and thus, the trial court should have limited the testimony to exclude any identification of Orsborne.
 {¶ 8} The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Sixth Amendment to the United States Constitution; State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482,855 N.E.2d 834, ¶ 13.
 {¶ 9} In Crawford v. Washington (2004), 541 U.S. 36, 68,124 S.Ct. 1354, the United States Supreme Court held that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." The United States Supreme Court did not define the term "testimonial", but instead gave examples including: "all ex-parte in-court testimony or its functional equivalent, extrajudicial statements contained in formalized testimonial materials (e.g., affidavits, depositions, prior testimony, confessions); and a class of statements that are made `"`"under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.''"" State v. Muttart, ___ Ohio St.3d ___, 2007-Ohio-5267, ¶ 60, citing *Page 5 
Stahl, 2006-Ohio-5482, at ¶ 19, quoting Crawford, 541 U.S. at 51-52, quoting the brief of amicus curiae National Association of Defense Lawyers.
 {¶ 10} "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Stahl, 2006-Ohio-5482, paragraph two of the syllabus.
 {¶ 11} In the present case, Orsborne is arguing the trial court erred in admitting the out-of-court statements that S.F. made to a sexual assault nurse examiner (S.A.N.E.) nurse, and to her grandmother.
 {¶ 12} In determining whether the statements S.F. made to the nurse and to her grandmother were testimonial, we must focus on the expectations of S.F. at the time she made the statements.
 {¶ 13} The S.A.N.E. nurse, Pam Inbody, testified that she asked S.F. why she had come to the hospital but that S.F. did not respond to the question and was quiet and withdrawn. (T. 66). Inbody testified that S.F. made the following statement during the medical examination:
 That's when [S.F.] said to me, "Harlin touched me." I thought, okay, I'm finally going to get somewhere with this little girl. So, we have some questions that we need to know, you know. I asked her, "Harlin touched you with what?" She never really answered me. "Where did Harlin touch you?" She just kind of pointed to the area between her legs. She didn't say anything. *Page 6 She just kind of pointed. I asked her if she had her clothes on, or her clothes off. These are all basic questions that we ask all the kids that come to the clinic. She just would not answer any more after that. It was just one time, one phrase, and that was all I was able to get her to talk to me about.
(T. 72-73).
 {¶ 14} Generally, "statements made by child abuse victims to medical providers are not testimonial in nature." State v. Johnson, 12th Dist. No. CA2005-10-422, 2006-Ohio-5195, ¶ 50, citations omitted. InJohnson, the appellant challenged the admission of medical records which contained statement made by the child-victim to medical examiners. Id. at ¶ 45. The Twelfth District found that the child's statements were made while seeking treatment at a hospital and were provided "so that the hospital's medical staff could treat her, not to investigate acts of alleged sexual abuse, nor to determine the identity of the perpetrator of the abuse." Id. at ¶ 50, citations omitted. In addition, the court found that there was nothing in the record to indicate that the nine year old child would have realized that the statement would be used at a trial. Id., citations omitted. The court, in Johnson, concluded that the victim's statements were not testimonial and the statements introduction did not violate Johnson's right to confront witnesses. Id. at ¶ 51.
 {¶ 15} In a recent Ohio Supreme Court case, the Court found that statements made by a child-victim to her mom, to her mom's friend, to a friend of *Page 7 
her mom's friend, to a social worker, and to a clinical counselor and therapist were not testimonial statements. Muttart, 2007-Ohio-5267, at ¶ 61. The Court determined that "[statements made to medical personnel for purposes of diagnosis or treatment are not inadmissible underCrawford, because they are not even remotely related to the evils which the Confrontation Clause was designed to avoid." Id. at ¶ 63, citations omitted.
 {¶ 16} In the present case, the statements that S.F. made to the S.A.N.E. nurse were made during a medical examination. There is nothing in the record to indicate that the four year old child victim would believe that telling a nurse was the equivalent to telling a police officer, or that she realized that the statement she made to the nurse could be used at a trial. Thus, S.F.'s statements to the S.A.N.E. nurse were not testimonial.
 {¶ 17} Jean Luce, the victim's grandmother, testified that she was with S.F. on June 8, 2005 and they were shopping at the Dollar Deals store. (T.24). While at the store, S.F. needed to use the restroom. According to Luce, four year old S.F. was using the restroom on her own, but Luce had the door to the restroom open just a little bit so that she could hear S.F. (T. 25-26). Luce testified that S.F. was whining when she was urinating, so Luce entered the bathroom and asked why she was whining. S.F. told her grandmother that "Harlin [Orsborne] has *Page 8 
licked, kissed, and rubbed her cooter." (T. 28). According to Jean, the victim had been taught to call her vagina, her cooter. (Id. 30).
 {¶ 18} The child-victim's statements to her grandmother were not made under a circumstance indicating to the child-victim that the statement would be used in a trial. Rather, S.F., who was four years old at the time of her statement, made her statement in response to a question from her grandmother on why she was whining while urinating. S.F. would not expect that her statement to her grandmother would be used in a trial.
 {¶ 19} After reviewing the record, we hold that S.F.'s statements to the S.A.N.E. nurse and to her grandmother did not constitute testimonial statements, and therefore, the prosecutions introduction of the statements at trial did not violate the Confrontation Clause.
 {¶ 20} Evidence Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements are not excluded by the hearsay rule even when the declarant is available as a witness when the statements are made for the purposes of medical diagnosis or treatment. Evid.R. 803(4).
 {¶ 21} The statements S.F. made to the S.A.N.E. nurse were for the purpose of medical treatment and the trial court did not err in admitting those statements. *Page 9 
 {¶ 22} Orsborne also argues that S.F.'s statement to her grandmother should not have been admitted since the trial court did not provide timely notice under Evid.R. 807(A)(4). Further, Orsborne argues the statement to the grandmother should have been limited to exclude any identification of Orsborne.
 {¶ 23} During the trial, the trial court instructed the jury that "the evidence that was presented, the statement that the child, [S.F.], made to [Luce] was not offered, and you can't consider it as proof of what [S.F.] told this witness. In other words, it's not being offered to establish the proof of what the little girl said. It is being offered to explain this witnesses actions after that was said. * * *." (T. 35).
 {¶ 24} The jury is presumed to follow the trial court's instructions.State v. Williams, 10th Dist. Nos. 02AP-730, 02AP-731, 2003-Ohio-5204, ¶ 49, citations omitted.
 {¶ 25} In the present case, S.F's statement to Luce was admitted to explain Luce's action rather than to prove the truth of the matter asserted. The trial court specifically instructed the jury that the statement S.F. made to her grandmother was not offered in evidence to prove the truth of the matter asserted, and the jury is presumed to follow the trial court's instructions. See Id. Thus, we find the statement S.F. made to Luce was not hearsay, and as a result, was not subject to the time requirements listed in the hearsay exception of Evid.R. 807(A)(4). *Page 10 
 {¶ 26} In addition, Orsborne never requested the trial court should have excluded the identification of Orsborne. Rather, Orsborne's motion in limine requested that the child-victim's entire statement be excluded. As a result, we will not address Orsborne's argument that the identification portion should have been excluded.
 {¶ 27} Orsborne's first and fourth assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II The trial court committed error prejudicial to defendant in that the Defendant's conviction was against the manifest weight of the evidence.
 {¶ 28} Orsborne argues, in his second assignment of error, that a review of the testimony and exhibits indicates the jury lost its way in weighing the evidence. Orsborne argues the prosecution used inferences regarding a herpes infection without presenting evidence directly on whether Orsborne was infected with herpes simplex I, the prosecution alluded to a connection between Orsborne possibly having herpes and the fact that the child victim had herpes in its closing arguments. Orsborne argues that the prosecution used these improper inferences in order to convict Orsborne.
 {¶ 29} When determining whether a conviction is against the manifest weight of the evidence a reviewing court must examine the entire record, *Page 11 
"`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E. 2d 717. Credibility determinations are primarily a matter for the trier of fact since the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility. State v. DeHass (1967), 10 Ohio St.2d 230, 231,227 N.E.2d 212.
 {¶ 30} Jean Luce, the child-victim's grandmother, testified that she was with S.F. on June 8, 2005 and they were shopping at the Dollar Deals store. (T.24) While at the store, S.F. needed to use the restroom. According to Luce, four year old S.F. was using the restroom on her own, but Luce had the door to the restroom open just a little bit so that she could hear S.F. (T. 25-26). Luce testified that S.F. was whining when she was urinating, so Luce entered the bathroom and asked why she was whining. (T. 28). Luce testified: "[S.F.] told me that Harlin had licked, kissed, and rubbed her cooter." (T. 28). Luce then took S.F. to S.F.'s apartment where S.F. told her mom, Shirley. (T.30). The police were called and after the police left, Luce and Shirley took S.F. to the emergency room at Lima Memorial Hospital. (T. 30). Luce testified that they knew an *Page 12 
individual by the name of Harlin and it was Harlin Osborne,[1] and he was the only person the family was associated with in June of 2005 with the name Harlin. (T. 31).
 {¶ 31} Shirley, S.F.'s mother, testified that S.F. was born on April 25, 2001. (T. 41). Shirley testified that on the first week of June 2005, she lived at a duplex in Allen County with her children, and Harlin Orsborne and Mary Davis lived next door. (T. 41-42). On June 5, 2005, Shirley's husband had cut his thumb, and Shirley asked Davis to watch her children while she took her husband to the hospital. (T. 44). According to Shirley, she left at 7:30 p.m. and returned between 9:30 and 10:00 p.m. (T. 45). Shirley testified that Davis was in Shirley's apartment when she left, and all of the children except S.F. were asleep when she left. (T. 45). Shirley testified that S.F. was wearing a gray jogging outfit. (T. 45).
 {¶ 32} When Shirley returned from the hospital, Harlin Orsborne was at the house and S.F. was asleep on Orsborne's lap. (T. 46). Shirley testified that Harlin had explained that Davis had gone home and went to bed. (T. 46). According to Shirley, S.F. was wearing a nightgown and underwear that she had never seen before. (T. 46). Shirley asked the defendant about it and, he said, "[t]hat she had peed herself," which Shirley had found unusual because S.F. was fully potty *Page 13 
trained. (T. 47). Shirley testified that she found the gray jogging suit in the bathroom and it was dry. (T. 47-48).
 {¶ 33} Shirley testified: S.F. went on a shopping trip with S.F.'s grandmother and great grandmother and when they returned home Luce was upset; they had called the police; and after the police left, Shirley and Luce took S.F. to Lima Memorial Hospital. (T. 48). Shirley testified that she went to the hospital with Luce and S.F. on June 8, and S.F. was wearing the same underwear that she wore on the night of June 5. (T. 49, 51). Shirley testified that she had not washed the underwear. (T. 49).
 {¶ 34} Pamela Inbody, a registered nurse at Lima Memorial Hospital, testified that she was a sexual assault nurse examiner (S.A.N.E.), and was a pediatric S.A.N.E. (T. 56). Inbody also testified that she helped establish the kids' clinic, and that she has been practicing as a S.A.N.E. and a pediatric S.A.N.E. nurse since 2001. (T. 56). Inbody testified that she was working at Lima Memorial on June 8, 2005, and she examined S.F. (T. 63).
 {¶ 35} Inbody testified that during the medical examination, the following occurred:
 That's when [S.F.] said to me, "Harlin touched me." I thought, okay, I'm finally going to get somewhere with this little girl. So, we have some questions that we need to know, you know. I asked her, "Harlin touched you with what?" She never really answered me. "Where did Harlin touch you?" She just kind of pointed to the area between her legs. She didn't say anything. *Page 14 She just kind of pointed. I asked her if she had her clothes on, or her clothes off. These are all basic questions that we ask all the kids that come to the clinic. She just would not answer any more after that. It was just one time, one phrase, and that was all I was able to get her to talk to me about.
(T. 72-73). Inbody testified that she notice a small red dot on S.F.'s labia majora. (T. 76). Inbody testified that, at a follow up appointment on June 14, S.F. had a rash present that Inbody had not seen on June 8. (T. 79).
 {¶ 36} Dr. Michael Ruhlen, a pediatrician, examined S.F. on June 14, 2005. (T. 113, 118). Dr. Ruhlen testified that the results from a culture revealed a definitive diagnosis of herpes type 1. (T. 123). Dr. Ruhlen testified that herpes is in a family of viruses that causes cold sores in the mouth and similar sores in the genital tract, Type I typically occupies the mouth and throat, and that Type II typically affects the genital tract; however, either type can appear in the other location. (T. 123). Dr. Ruhlen also testified regarding the various ways in which herpes can be spread, including oral to vaginal contact or by "directly taking an instrument of any kind and touching lesions in the mouth and then touching the genital tract." (T. 123-124, 129-130). Dr. Ruhlen testified, "[m]y opinion was that with a very reasonable degree of medical certainty she had an infection that was likely to have represented a sexual transmission, or an oral to genital transmission of herpes, to her genital area, but there are other ways that that virus can be transmitted." (T. 135). *Page 15 
 {¶ 37} Gabriel Feltner and Julie Cox, employees of B.C.I., testified regarding tests they performed on a pair of underwear collected from the child victim. Feltner testified that he examined the crotch area of the underwear and found three sperm cells. (T. 148). Feltner also tested for the presence of amylase, a protein that is found in high concentrations in saliva, and the test results were positive. (T. 149). Cox testified that she determined that "there was no DNA foreign to [S.F.] in the two cuttings [she] took from the crotch of her panties." (T. 160). Cox also testified that she was unable to determine the source of the semen. (T. 162).
 {¶ 38} Detective Scott Leland, a detective with the Lima Police Department, testified that at one point in the investigation Orsborne had "pulled his lip down * * * [and] said, `I couldn't have done this. Look at this. I've got sores in my mouth.'" (T. 196)
 {¶ 39} The prosecution presented a DVD of a police interview with Orsborne in which Orsborne confessed.
 {¶ 40} Even though the prosecution made statements regarding a herpes infection of the child-victim and stated the defendant has herpes during closing arguments, this does not establish that the jury clearly lost its way and created a manifest miscarriage of justice. (T. 231); SeeThompkins, 78 Ohio St.3d at 387. The defense counsel argued in his closing arguments that there was no testimony *Page 16 
or exhibits that say Orsborne had herpes. The trial court had instructed the jury that closing arguments are not evidence; and as previously noted, the jury is presumed to follow the trial court's instructionsWilliams, 2003-Ohio-5204, ¶ 49, citations omitted; (T. 226). Furthermore, we cannot say the jury clearly lost its way given Orsborne's video taped confession and Inbody's testimony that S.F. said "Harlin touched me."
 {¶ 41} After reviewing the entire record, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice when it found Orsborne guilty of rape with a specification that the victim was under ten years of age. Orsborne's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The State of Ohio committed a violation of discovery pursuant to Brady v. Maryland, and Rule 16 of the Ohio Rules of Criminal Procedure by failing to disclose to the defense a laboratory test performed on evidence in this case.
 {¶ 42} In his third assignment of error, Orsborne argues that Julie Cox, a scientist with BCI, testified about further testing for DNA which was performed at an outside lab, but those lab results were not disclosed to the defense, and were only disclosed after a favorable ruling from the trial court. Orsborne argues, the test result was a scientific test and was exculpatory evidence, thus, there was a clear violation of Crim.R. 16, and Brady v. Maryland (1963), 373 U.S. 83, *Page 17 83 S.Ct. 1194. The prosecution concedes it violated Crim.R. 16, but argues, the violation does not require a reversal of the conviction.
 {¶ 43} The failure to comply with Crim. R. 16 is governed by Crim. R. 16(E)(3) which provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.
Emphasis added.
 {¶ 44} A prosecutor's violation of Crim.R. 16 is reversible error, "only when there is a showing that (1) the prosecutions failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981,836 N.E.2d 1173, ¶ 131, citing State v. Parson, 6 Ohio St.3d 442, 445.
 {¶ 45} The trial court's decision regarding a Crim. R. 16 discovery sanction is reviewed under an abuse of discretion standard. State v.Gibson, 3d Dist. No. 1-06-74, 2007-Ohio-3345, ¶ 12, citations omitted. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 18 
 {¶ 46} Julie Cox, a scientist with B.C.I. testified regarding DNA testing that she had performed. Cox testified that Gabe Feltner found three sperm cells on the crotch of S.F.'s panties, and she tested the panties and determined that there was no DNA foreign to S.F. (T. 160-161). In her report, Cox stated a "Y-STR analysis may be helpful in determining the source of the semen on the crotch of the underwear." Cox testified that she was unable to identify the male component in the sperm cells by her testing, and Y-STR testing may be beneficial in determining the source of the semen in that Y-STR testing targets only male DNA. (T. 170). According to Cox, B.C.I. does not perform the Y-STR test so there was a request for the additional test. (T. 170-171.) At this point in the trial, Orsborne objected arguing that he had not received the lab report.
 {¶ 47} The Crim. R. 16 violation was based on the prosecution's failure to disclose the lab report from Lab Corporation of America. The report provided, "[d]eoxyribonucleic acid (DNA) was extracted from three (3) separate cuttings from the underwear (Item 3). Quantification of these extracts failed to yield any evidence of the presence of Y chromosome DNA."
 {¶ 48} The trial court inquired into whether a lab report was done and why Attorney Chamberlin, Orsborne's attorney, was not provided with a copy of the report. (T. 173-174). The trial court then allowed the defense to review the lab report. (T. 175). Chamberlin was given an opportunity to examine the report, and *Page 19 
when the trial court asked whether Chamberlin had ample opportunity to review the report, Chamberlin answered in the affirmative. In addition, the report was admitted into evidence as Defense Exhibit A.
 {¶ 49} The trial court gave the defense an opportunity to review the report, and the defense questioned Cox regarding the report. Orsborne's attorney did not request any continuances after reviewing the report nor did Orsborne's attorney request a mistrial. Although the prosecution violated Crim.R. 16, the violation is not reversible error in this case because there is no indication that Orsborne was prejudiced. Therefore, we cannot find the trial court abused its discretion in determining the discovery sanction.
 {¶ 50} Orsborne's third assignment of error is overruled.
 {¶ 51} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW and WILLAMOWSKI, JJ., concur.
[1] In the transcript of Luce's testimony, the last name is Osborne rather than Orsborne. *Page 1