OPINION
{¶ 1} Defendant-appellant, Richard L. Nitz, appeals from his conviction and sentence in the Butler County Common Pleas Court on one count of second-degree felony child endangering.
 {¶ 2} In March 2003, appellant was living with his girlfriend, Colleen P., and her three children in a trailer in Butler County, Ohio. Colleen's youngest child was a six-year-old girl named N.P. On March 21, 2003, Colleen's sister, Patricia Senters, went to the trailer to pick up the three children to take them to the movies and have them spend the night at her house. When Senters arrived at the trailer, appellant initially told her that N.P. was not going with her, because she was in trouble. Senters insisted on taking N.P. with her, as she had promised. As N.P. followed Senters out of the trailer and into her car, appellant called N.P. back to the trailer. Senters saw appellant grab N.P.'s arm and whisper something into her ear. N.P. looked down, nodded, and then came out to Senters' car. When N.P. got in the car, Senters asked her what appellant had said to her, and N.P. answered, "Nothing." Senters then said, "Well, he said something to you. Does he want you to be home by a certain time or what?" N.P. looked at her and stated, "He said I was going to get it bad tomorrow if I went with you tonight." Senters said, "Well, we'll see about that."
 {¶ 3} Senters drove the short distance to her house. When she sat down on her porch swing, N.P. came up to her. When she put her arms around N.P. to pull her up on the swing, she heard N.P. exclaim, "Ow." N.P. pulled away from her. When Senters asked N.P. what was the matter, she told her "that is where I got burned." This caused Senters to remember that one week earlier appellant had told her that N.P. had gotten burned in the shower after he had turned up the hot water heater in the trailer because they were not getting any hot water. He also told Senters that he had to buy N.P. "a whole bunch of toys because she got burned." When Senters asked him if N.P. was okay, he said, "Yeah," and added, "I got burned, too. My hands are hurting. I burned my hands, too."
 {¶ 4} Senters asked N.P. to let her see where she had been burned. N.P. shook her head "no," looked down, and said, "No, no, I'll get in trouble." Senters lifted up N.P.'s shirt, and saw that the entire left side of her back was red and that blisters had formed on it. She then called her older sister, Maria Bell, asking her to come over and examine N.P.'s burns. After Bell arrived, the two of them arranged to have N.P. change into a sweatshirt. When N.P. took off the shirt she was wearing, Bell looked at N.P.'s back and then looked away. Senters and Bell went out on the porch, and agreed they needed to talk to N.P. When they went back inside, Bell asked N.P., "Is your back hurting you?" to which N.P. replied, "Yeah, it hurts real bad." Bell then asked, "Well, what happened?" N.P. looked down, said nothing, and started to pout and sniffle. Bell said, "It is okay, you can tell us." Senters added, "Yeah you can tell us. It is okay." N.P. responded, "I'm not supposed to tell." She started crying. Senters and Bell told her, "Well, if you tell us what happened, nothing will happen to you ever again anymore. You can tell us, it's okay." N.P. told them, "Rich burned me. He poured hot water on me out of shampoo bottles." She started crying hard and "hiccupping." N.P. went on to tell her aunts that appellant "was bad and he was mean to her[.]" She told them "she would have to do her chores[,]" and if "one little thing wasn't done right," appellant "would hit [her] in the back with a stick."
 {¶ 5} N.P. was taken to Fort Hamilton Hospital, where she was diagnosed with having first and second degree burns over five to ten percent of her body. Senters also contacted the Butler County Sheriff's Office and reported what N.P. had told her and Bell. Detective Jason Rosser went to the trailer park where appellant resided and asked him to come to the sheriff's office to speak with him. Appellant agreed to do so.
 {¶ 6} At the sheriff's office, Rosser read appellant hisMiranda rights, and then asked him about how he disciplined Colleen's three children. Appellant told him that he would give them a choice between a "time out" and a "whipping." When Rosser asked appellant what he whipped them with, he answered a "paddle." When Rosser asked what the paddle resembled, appellant said "a long board." When Rosser asked appellant if it was "approximately a 2x4," he answered, "[W]ell yes, I guess it would be."
 {¶ 7} Rosser, along with Detective Melina Smith, then questioned appellant about N.P.'s burns. At first, appellant stated that N.P. had burned herself by turning on the water too hot in the shower. He later conceded that he had poured water over N.P.'s head out of a shampoo bottle, but at first said he used only warm water. He then admitted that he had twice poured hot water on N.P.'s head, that N.P. had screamed the first time he had done so, and that she had cried continuously thereafter. At the close of the interview, appellant signed a statement admitting that he had twice poured hot water on N.P.'s head, and that he was angry at N.P. when he did so.
 {¶ 8} On April 30, 2003, appellant was indicted on one count of child endangering, pursuant to R.C. 2919.22(B)(1). The indictment contained a specification alleging that he had caused N.P. serious physical harm, which rendered the offense a felony of the second degree, pursuant to R.C. 2919.22(E)(2)(d).
 {¶ 9} Appellant was tried before a jury on July 9 and 10, 2003. N.P. did not testify at the trial. Instead, the state presented the testimony of Senters and Bell, who were permitted, over appellant's objections, to testify as to what N.P. had told them. The trial court permitted the testimony on the basis that N.P.'s statements qualified as "excited utterances," pursuant to Evid.R. 803(2). The state also presented the testimony of Detectives Rosser and Smith, as well as appellant's statement to police.
 {¶ 10} Appellant testified on his own behalf. He asserted that N.P. had received her burns accidentally as a result of her having turned the water on in the shower too hot. He acknowledged that he told the police that he had poured hot water on N.P. twice and that he was angry at N.P. at the time, but insisted that he told the police that merely because they had told him they were going to take either him or Colleen into custody, and he did not want to see Colleen taken into custody since her children needed her.
 {¶ 11} The jury convicted appellant of second-degree felony child endangering. The trial court sentenced him to eight years in prison.
 {¶ 12} Appellant now appeals his conviction and sentence for felony child endangering, raising two assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The trial court erred in allowing out-of-court statements by the victim to be solicited through the testimony of other witnesses."
 {¶ 15} Appellant argues that the trial court erred by admitting Senters' and Bell's testimony about several out-of-court statements made by N.P. in response to their questions to the child. He contends, among other things, that N.P.'s statements were not spontaneous, but rather, were the product of her reflection, and, therefore, they did not fit within the "excited utterance" exception to the hearsay rule, as the trial court found.
 {¶ 16} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible except as otherwise provided in the United States or Ohio Constitutions, by statute enacted by the General Assembly not in conflict with a rule of the Ohio Supreme Court, by the Ohio Rules of Evidence, or by other rules prescribed by the Ohio Supreme Court. Evid.R. 802. Exceptions to the hearsay rule are provided in Evid.R. 803, which states in relevant part:
 {¶ 17} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 18} "* * *
 {¶ 19} "(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 20} In order to have an out-of-court statement admitted as an "excited utterance," pursuant to Evid.R. 803(2), the proponent of the evidence must establish that (1) the statement was made in reaction to a startling event; (2) the statement was made under the stress of excitement caused by the event; and (3) the statement relates to the event. Weissenberger, Ohio Evidence (2004), 452-453, Section 803.17. An out-of-court declarant's statement made in response to a question may fit within the "excited utterance" exception to the hearsay rule, if the questioning "(1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988),37 Ohio St.3d 87, paragraph two of the syllabus.
 {¶ 21} Appellant challenges the trial court's admission of three of N.P.'s out-of-court statements. First, he argues that the trial court erred by allowing Senters to testify about what appellant had whispered to N.P. before she left with Senters, wherein he told N.P. that she was going "to get it bad" if she went with Senters. He points our that Senters testified that N.P. initially said appellant had told her "nothing," but then later said he had told her she was going "to get it bad." Appellant asserts that this demonstrates that N.P.'s statement was not spontaneous but rather the product of N.P.'s reflective thought, and, therefore, does not fit within the hearsay exception for "excited utterances." He further asserts that N.P.'s statements do not relate back to the incident in which she was burned. We find this argument unpersuasive.
 {¶ 22} N.P.'s statement to Senters that appellant had warned her that she "was going to get it bad" qualified as an excited utterance admissible under Evid.R. 803(2). First, N.P.'s statement was in reaction to a startling event, to wit: that appellant, who had scalded her with hot water only one week earlier, had threatened her if she left with her aunt. Second, the trial court did not abuse its discretion in determining that N.P. was still under the stress of the excitement caused by appellant's threat when N.P. made her statement to Senters. While N.P.'s first reaction was to say that appellant had said "nothing" to her when he called her back to the trailer and whispered something into her ear, N.P. leveled with her aunt once she realized that appellant posed no immediate threat. Finally, N.P.'s statement unquestionably related to the startling event that justified the admission of N.P.'s statement, namely, appellant's threat. It was not necessary, as appellant argues, for N.P.'s statement to relate to the incident where she was burned. Consequently, we conclude that the trial court did not abuse its discretion in admitting Senters' testimony regarding what N.P. said appellant had told her.
 {¶ 23} Appellant also argues that the trial court erred when it allowed Senters and Bell to testify that N.P. told them he had burned her by pouring hot water over her head from a shampoo bottle. He points out that N.P. first told her aunts that she could not tell them because she would get in trouble, before telling them that appellant had scalded her. He asserts that N.P.'s initial reluctance to place the blame on him demonstrates that her statements were not spontaneous, but rather the product of her reflection. We disagree with this argument.
 {¶ 24} N.P.'s reluctance to accuse appellant fits in with the fact that he had threatened her just before she left with Senters. It does not demonstrate that N.P. was no longer under the stress of excitement caused by her being burned; instead, it merely shows that N.P. was under competing stresses: one was the lingering stress from appellant having threatened her just before she left with Senters, and the second was from the stress created by the incident in which appellant scalded her by twice pouring hot water over her head from a shampoo bottle. Although a week had passed from the time of the incident to the time N.P. told her aunts that appellant had done it, it is well-settled that "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance." State v.Taylor (1993), 66 Ohio St.3d 295, 303. Also, N.P. was only six years old at the time of this occurrence. It has been recognized that the "excited utterance" exception is entitled to a more expansive interpretation in cases of child abuse, since "children are likely to remain in a state of nervous excitement longer than would an adult," and children have "limited reflective powers." Id. at 304. This court has recognized that "[d]eclarations of children in their tender years may be particularly trustworthy."State v. Brown (1996), 112 Ohio App.3d 583, 602. Given N.P.'s age, it was not unreasonable for the trial court to conclude that her statement to her aunts that appellant scalded her was made under the stress of the excitement caused by appellant's actions in scalding her, and not as a result of her reflection.
 {¶ 25} Lastly, the questions that Senters and Bell asked N.P. were not coercive or leading; they merely facilitated N.P.'s expression of what was already the natural focus of her thoughts; and they did not destroy the domination of the nervous excitement over N.P.'s reflective faculties. Wallace, 37 Ohio St.3d 87, paragraph two of the syllabus. Consequently, we conclude the trial court did not abuse its discretion in admitting Senters' and Bell's testimony regarding N.P.'s statement that appellant had burned her by pouring hot water over her head from a shampoo bottle.
 {¶ 26} Appellant's first assignment of error is overruled.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "The trial court erred to the prejudice of the defendant by admitting testimony and evidence of other alleged acts against the victim by the defendant-appellant."
 {¶ 29} Appellant argues that the trial court erred by failing to exclude "other acts" evidence against him submitted by several of the state's witnesses. Specifically, he points to Senters' and Bell's testimony that N.P. told them appellant would punish her by hitting her on the back with a stick. He also points out that the state's expert medical witness was permitted to testify about a bruise on N.P.'s buttocks, which the witness stated appeared to be older than N.P.'s burns. He also notes that Detective Rosser was permitted to testify that appellant used a two by four to "paddle" Colleen P.'s children. He contends that evidence of these other acts should have been excluded under Evid.R. 404(B), since they do not prove any of the matters enumerated in the rule that would justify their admission. We disagree with this argument.
 {¶ 30} Evid.R. 404(B) states as follows:
 {¶ 31} "Evidence of the other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 32} In this case, the evidence that appellant had imposed harsh, excessive discipline on Colleen's children in the past tended to show that N.P.'s being burned by hot water was not an accident, as appellant contended at trial. Thus, the trial court did not abuse its discretion in admitting evidence of appellant's other, prior acts of inflicting harsh, excessive punishment on N.P. or Colleen's other children.
 {¶ 33} Appellant's second assignment of error is overruled.
 {¶ 34} Judgment affirmed.
Young, P.J., and Walsh, J., concur.