OPINION
{¶ 1} Defendant-appellant, Jeffrey Dean Hunneman, appeals from his conviction and sentence in the Clermont County Court of Common Pleas for child endangering. For the reasons outlined below, we affirm appellant's conviction but reverse and remand for resentencing.
 {¶ 2} On August 18, 2004, appellant was indicted on one count of child endangering in violation of R.C. 2919.22(B)(1) with a specification that serious physical harm was inflicted, making the offense a felony of the second degree. Appellant pled not guilty and the case proceeded to a jury trial, held November 7 and 8, 2005.
 {¶ 3} The evidence produced at the trial established that on March 8, 2004, appellant's then five-year-old stepdaughter, D.M., got on her school bus to go to her elementary school. The state's first witness, bus driver Melissa Wilson, testified that as soon as D.M. got onto the bus she showed Wilson her left index finger and told her that her finger hurt. Wilson stated that she observed D.M.'s finger was red and swollen at the knuckle. Wilson testified that D.M. appeared "a little bit upset" and that her eyes were "red and teary" as if she had previously been crying. Wilson stated that she asked D.M. how she had hurt her finger and that D.M. told her that her "daddy" had tried to break her finger to punish her for stealing food. Wilson then used her radio to arrange for the school nurse to meet D.M. when the bus arrived at the elementary school.
 {¶ 4} The second witness to testify for the state was Judith Penry, D.M.'s kindergarten teacher. Penry testified that on March 8, 2004, she was called out of her classroom to meet with D.M., the principal, and the school nurse in the office. Penry testified that D.M. had flushed cheeks and appeared as if she may have been crying. Penry testified that D.M. told her that her "daddy" had found a banana in her bedroom the previous evening and that he got mad and bent her finger backwards. She testified that D.M. was upset and angry while telling her about the incident.
 {¶ 5} On the second day of trial, the state presented the testimony of Cathy Edwards, the school nurse who met D.M. as she got off the school bus. Edwards testified that she was waiting when the bus arrived and that as D.M. got off of the bus, she held up her finger and told Edwards that it hurt. Edwards testified that she took D.M. to the school clinic. She stated that D.M. began to cry as she told Edwards that her brother had hidden a banana in her bedroom and that her "daddy" thought she was the one that had taken the banana so he "bent her finger until it hurt and it made her cry." Edwards testified that she photographed and treated D.M.'s finger with ice and that she informed the school principal and counselor that D.M. would need follow up care. Edwards also testified that D.M.'s teacher, Penry, reported the incident to children's services.[1] D.M. was later examined at the Cincinnati Children's Hospital, where it was determined that D.M. had suffered a broken index finger on her left hand.
 {¶ 6} The jury found appellant guilty of child endangering on November 8, 2005 and the case proceeded to sentencing on December 19, 2005. Finding that appellant was on probation for a prior similar offense at the time of this incident and that a minimum sentence would demean the seriousness of the offense, the court sentenced appellant to three years in prison. Appellant then filed this timely appeal, raising the following two assignments of error for our review.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED BY REPEATEDLY PERMITTING INADMISSIBLE HEARSAY INTO EVIDENCE DURING MR. HUNNEMAN'S TRIAL CONTRARY TO THE CONFRONTATION CLAUSE AND OHIO LAW AND BY ALLOWING THE ENSUING CONVICTION TO STAND BASED ON LEGALLY INSUFFICIENT EVIDENCE."
 {¶ 9} Appellant essentially raises three separate issues within this assignment of error: that the testimony violated his constitutional rights under the Confrontation Clause, that the testimony was inadmissible hearsay, and that the conviction was based on insufficient evidence.
 {¶ 10} Appellant argues that the state's case rested entirely on the inadmissible hearsay testimony of D.M.'s bus driver, school nurse, and teacher which the trial court permitted over the defense's objection.
 {¶ 11} The Sixth Amendment's Confrontation Clause guarantees that, "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has explained that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for crossexamination." Davis v. Washington (2006), ___ U.S. ___, 126 S.Ct. 2266, 2273, quoting Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354. There is no question in the case before us that D.M., the declarant of the statements testified to by the state's witnesses, was available for trial and that defendant did not have a prior opportunity to cross-examine her regarding the statements she made. D.M., although only seven years of age at the time of trial, was declared competent to testify and asked to return for trial, but was never called by the state. Therefore, the only question for this court for purposes of appellant's Confrontation Clause challenge, is whether the statements made by D.M. regarding the cause of the injury to her finger were testimonial statements. We find that they were not.
 {¶ 12} In Davis, the Supreme Court explained that only "testimonial statements" cause the declarant to be a "witness" within the meaning of the Confrontation Clause and that it is the testimonial nature of a statement which separates it from other hearsay that, "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id. The Court in Davis went on to hold that the testimony of a 911 operator, regarding statements of the victim, in which she identified Davis as the assailant in a domestic disturbance, was not barred the Confrontation Clause. The Court, quotingCrawford, explained that testimony is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." In contrast, the primary purpose of the 911 call in Davis was to describe current circumstances and enable police assistance to meet an ongoing emergency, and not "to establish or prove some past fact." Id. at 2276.[2]
 {¶ 13} The Ohio Supreme Court, in its own recent examination of the definition of "testimonial," explained that a testimonial statement "includes one made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'." State v. Stahl, 111 Ohio St. 3d 186,2006-Ohio-5482, ¶ 36, citing Crawford, at 52. The court also stated that a determination of whether a statement is testimonial for Confrontation Clause purposes, should focus "on the expectation of the declarant at the time of making the statement," and noted that "the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Id.
 {¶ 14} The court applied this definition in Stahl, and held that the trial court had properly allowed the testimony of a nurse practitioner regarding the statements of a rape victim, in which she identified her attacker, made during a rape exam. Id. The court noted that, although the rape exam was done in a unit which openly collects evidence for purposes of later prosecution, a determination of whether the victim's identification of her attacker was testimonial was to focus on the expectations of the victim herself. Id. The court explained that the victim had already identified her attacker to law enforcement and "could reasonably have assumed that repeating the same information to a nurse practitioner served separate and distinct medical purposes." Id. at ¶ 46. The court held that the statements were nontestimonial, and therefore not barred by the Confrontation Clause. Id.
 {¶ 15} Similarly, in State v. Johnson, Butler App. No. CA2005-10-422,2006-Ohio-5195, this court upheld the admission of medical records which contained the statements of a child victim regarding acts of sexual abuse committed by the appellant. We noted that generally, "statements made by child abuse victims to medical providers are not testimonial in nature." Id. at ¶ 50, citing State v. Sheppard, 164 Ohio App.3d 372,2005-Ohio-6065, ¶ 30; In re D.L., Cuyahoga App. No. 84643,2005-Ohio-2320, ¶ 20. Applying the Supreme Court cases ofCrawford and Davis, we held that the child's statements to medical providers regarding the sexual abuse were not testimonial and that their introduction into evidence did not violate the Confrontation Clause. Id. We explained that the child victim's statements were provided "so that the hospital's medical staff could treat her, not to investigate acts of alleged sexual abuse, nor to determine the identity of the perpetrator of the abuse." Id. Further, we noted that "nothing in the record [indicated] that [the victim] would have realized that her statements would be available for use at a later trial." Id.
 {¶ 16} The facts of the case before us, like those in Davis,Stahl, and Johnson, lead us to the conclusion that the statements made by D.M. were not testimonial in nature. Like Johnson, nothing in this case indicates that D.M. ever had any expectation that her statements about the nature of her broken finger would be available for use in a later trial against her stepfather. Nor can we say with any confidence that an objective witness in then five-year-old D.M.'s position would reasonably believe that the statements were being made for that purpose. While appellant requests that we consider the motives of the bus driver, nurse, and teacher in questioning D.M. about the nature of her injury, it is clear that the focus is to be on the beliefs and expectations of D.M. herself. We are only required to consider the motives and expectations of the testifying witnesses if we were to find that their questioning had somehow affected D.M.'s expectations in making the statements. However, we do not find those circumstances present in this case. It is clear that D.M. was upset and simply relaying the cause of her injury to her bus driver, teacher, and nurse for purposes of assisting in treatment. This is not, as was sought to be avoided inCrawford, Davis, and Stahl, a case in which a victim is participating in an official investigation and giving statements for the primary purpose of "establishing or proving some past fact." We therefore find that D.M.'s statements regarding the nature of her injury were not testimonial, are not barred by the Confrontation Clause, and are therefore subject to only the traditional limitations with regard to hearsay evidence.
 {¶ 17} Appellant next argues that even if this court is to find that testimony of the bus driver, nurse, and teacher are not barred by the Confrontation Clause, their testimony as to D.M.'s statements still amounts to inadmissible hearsay and fails to qualify for the excited utterance exception under which they were admitted.
 {¶ 18} "Hearsay" is any statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay testimony is not admissible as evidence in a trial except as provided in the United States and Ohio Constitutions, by statute, by the Ohio Rules of Evidence, or by other rules prescribed by the Ohio Supreme Court. Evid.R. 802. Ohio Evidence Rule 803 provides exceptions to the hearsay rule in certain circumstances, and permits the admission of "excited utterances," or those statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).
 {¶ 19} We recently had the opportunity to examine the admissibility of statements under the excited utterances exception to the hearsay rule inState v. Leide, Butler App. No. CA2005-08-363, 2006-Ohio-2716. InLeide, we referred to the four part test for admissibility discussed in the Ohio Supreme Court case of State v. Taylor (1993),66 Ohio St.3d 295, which requires:
 {¶ 20} "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Id. at ¶ 13, quoting Taylor at 300-301.
 {¶ 21} Additionally, an out-of-court statement, made in response to a question may properly fit within the excited utterance exception if the questioning "(1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v.Nitz, Butler App No. CA2003-09-228, 2004-Ohio-6478, ¶ 20, quotingState v. Wallace (1988), 37 Ohio St.3d 87.
 {¶ 22} "The admission or exclusion of evidence, including the determination of whether a hearsay declaration should be admitted as an excited utterance, lies in the trial court's discretion." Leide at ¶ 14. A reviewing court will therefore not overturn the decision of a trial court in admitting or excluding such evidence, absent an abuse of that discretion. See id. "Abuse of discretion" connotes more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id. "Abuse of discretion means a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." Id., citing State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. The term has further been defined as "a view or action `that no conscientious judge, acting intelligently, could honestly have taken'." Id.
 {¶ 23} Appellant argues that it was unreasonable for the trial court to consider the repeated statements made by D.M. to be "excited utterances." Appellant asserts that the "startling event" which caused injury had occurred the previous evening, and that D.M. therefore could not have still been "under the stress of excitement caused by the event" when she made statements about it to her bus driver, nurse, and teacher the next day. He argues that the delay effectively settled the startling event and made D.M.'s later statements a product of reflective thought rather than excited reaction. We find this argument unpersuasive.
 {¶ 24} We have previously recognized that "[t]here is no per se amount of time between the occurrence and the statement after which a statement can no longer be considered to be an excited utterance." Nitz at ¶ 24. In Nitz, we upheld as admissible the statements of a six-year-old child, made to her aunts, regarding injuries she had received at the hands of her mother's boyfriend a week earlier. The child's two aunts both testified that when asking their niece how she had received the blistering burns on her back, the six-yearold began crying and told them that her mother's boyfriend had poured hot water on her. Id. at ¶ 4. The child went on to describe how her mother's boyfriend would hit her in the back with a stick when she didn't do her chores properly. Id.
 {¶ 25} On appeal from his conviction for child endangering, the appellant Nitz argued that the testimony of the child's aunts amounted to impermissible hearsay. Nitz argued that the statements could not qualify for the excited utterances exception because the startling event had occurred a week earlier, making the child's recollection of the event to her aunts the product of reflective thought. On the contrary, we found that the fact that a week had passed before the child relayed the information to her aunts was not dispositive of whether it qualified as an excited utterance. We recognized that the excited utterance exception "is entitled to a more expansive interpretation in cases of child abuse, since `children are likely to remain in a state of nervous excitement longer than would an adult,' and children have `limited reflective powers'." Id. at ¶ 24; see, also, State v. Buchanan (May 17, 1999), Clermont App. No. CA98- 09-077 (finding statements of four-year-old child regarding abuse at the hands of the appellant within excited utterance exception despite delay). Finding that the declarations of children in their tender years may be considered "particularly trustworthy," and noting that the questioning by the child's two aunts was not coercive or leading and had merely facilitated the child's expression of her thoughts, we upheld the admissibility of the child's statements.
 {¶ 26} Similar to the circumstances in Nitz, the circumstances of the case before us lead us to the conclusion that the statements made by D.M. fall squarely within the definition of excited utterances. The testimony of each of the witnesses challenged by appellant reflect that D.M. was still upset, and appeared to have been recently crying, when she relayed the information about her injured finger. She spontaneously presented her swollen, bruised finger to her bus driver and school nurse, telling them that it hurt. As she told the full story to her school nurse, she became angry and again began to cry. Further, the questions that the witnesses subsequently posed only facilitated D.M.'s expression of what had caused her injury. We agree with the trial court and the state that the passage of a single night is insufficient to require an assumption that the anxiety and stress of having her finger bent backwards until it broke had been calmed by the time she told her bus driver, nurse, and teacher what had happened. We therefore find that the trial court did not abuse its discretion in finding that D.M's statements to those witnesses qualified as excited utterances in exception to the hearsay rule and properly admitted their testimony.
 {¶ 27} Lastly, appellant argues, albeit briefly, that his conviction was not supported by sufficient evidence and contends that the state failed to prove that he was the one to break D.M.'s finger. A challenge to the sufficiency of the evidence supporting a conviction requires a reviewing court to determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Haney, Clermont App. No. CA2005-07-068,2006-Ohio-3899, ¶ 14. After thoroughly reviewing the evidence presented in this case, it is clear that the testimony of each of the state's witnesses corroborated each other with regard to what D.M. told them about her injured finger. Wilson, Edwards and Penry each testified that D.M. told them the same story about her "daddy" finding a banana in her bedroom and bending her finger backwards to punish her. Each of them also testified that appellant was known to be D.M.'s stepfather and lived with D.M. and her mother. Further, Mike Jones, the child services agent from Clermont County Job and Family Services, testified that appellant was D.M.'s stepfather and that D.M. had no known contact with her biological father, who lived in Kentucky, during the year of 2004. Under these facts, we find that sufficient evidence was presented with which a rational trier of fact could find, beyond a reasonable doubt, that the state had proven that the "daddy" to whom D.M. referred in describing who had hurt her finger was, in fact, appellant. Because we find that the statements made by D.M. to her bus driver, teacher, and nurse were not testimonial and properly fit the definition of excited utterances, and that appellant's conviction was supported by sufficient evidence, appellant's first assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE TRIAL COURT ERRED BY SENTENCING MR. HUNNEMAN TO A THREE YEAR PRISON TERM."
 {¶ 30} Appellant's second assignment of error challenges the sentences issued by the trial court as contrary to law. Specifically, appellant challenges the court's imposition of a prison term beyond the minimum as violative of the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 31} We note that appellant was sentenced under portions of Ohio's statutory sentencing scheme which have since been deemed unconstitutional by the Ohio Supreme Court. Among these sections were R.C. 2929.14(B) and R.C. 2929.19(B)(2) which required judicial fact finding before the imposition of sentences beyond the minimum term.Foster at ¶ 97-99. The court severed the sections from the remaining statutory provisions. Id. As a result of the court's severance of the provisions from Ohio's sentencing code, judicial fact finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Foster at ¶ 100.
 {¶ 32} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Foster at ¶ 104. The state agrees that appellant in this case was sentenced under statutes now deemed unconstitutional and must be resentenced. Consequently, we remand this case for resentencing consistent with Foster. The trial court will have full discretion to impose sentences within the statutory range and is no longer required to make findings or give reasons for imposing more than the minimum sentence. Appellant's second assignment of error is sustained.
 {¶ 33} Having reviewed the assignments of error, we affirm appellant's conviction for child endangering. However, pursuant to Foster, we reverse the court's sentencing decision and remand this matter for resentencing.
 {¶ 34} Judgment reversed as to sentencing only.
WALSH and BRESSLER, JJ., concur.
[1] Mike Jones, from Clermont County Job and Family Services, Children Services Division, testified that children's services investigated the report and removed D.M. from her home that day.
[2] In a companion case, Hammon v. Indiana, the Court held that the written affidavit statements of the victim of a domestic battery, given to investigating officers at the scene, were testimonial and barred under the Confrontation Clause. The Court reasoned that the statements were not given in the progress of an emergency and that the primary purpose of statements was to assist officers in investigation of possible past crime.